# EXHIBIT A

# 16th Judicial District Court
## Case Summary
### Case No. 16-03895-16

| | | | |
|---|---|---|---|
| Harry Conklin, Individually and on Behalf of the Estate of Sharon W. Conklin, Deceased and Carl Conklin<br>VS<br>Corinth Health Care, LLC, d/b/a Corinth Rehabilitation Suits on the Parkway and THI of Texas LLC | § § § § | Location:<br>Judicial Officer:<br>Filed on: | 16th Judicial District Court<br>Shipman, Sherry<br>05/18/2016 |

### Case Information

| | | |
|---|---|---|
| | Case Type: | **Malpractice - Medical** |
| | Case Status: | 05/18/2016 **Active** |
| | Case Flags: | **Jury Fee Paid** |

| DATE | CASE ASSIGNMENT |
|---|---|
| | **Current Case Assignment**<br>Case Number    16-03895-16<br>Court    16th Judicial District Court<br>Date Assigned    05/18/2016<br>Judicial Officer    Shipman, Sherry |

### Party Information

| | | | Lead Attorneys |
|---|---|---|---|
| Plaintiff | Conklin, Carl Wayne | | Powers, Patrick W.<br>*Retained*<br>214-239-8901(F)<br>214-239-8900(W) |
| | Conklin, Harry | | Powers, Patrick W.<br>*Retained*<br>214-239-8901(F)<br>214-239-8900(W) |
| Defendant | Corinth Health Care, LLC | | |
| | THI of Texas LLC | | |

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| 05/18/2016 | Plaintiff's Original Petition |
| 05/18/2016 | Case Information Sheet |
| 05/19/2016 | Jury fee paid<br>*(This entry only represents the payment of the jury fee - not a document filed with the clerk.)*<br>By: Plaintiff Conklin, Harry |
| 05/19/2016 | Citation<br><br>    Corinth Health Care, LLC<br>Served: 05/20/2016<br>Return Date/Time: 05/31/2016<br><br>    THI of Texas LLC<br>Served: 05/20/2016<br>Return Date/Time: 05/31/2016<br>*eserved in 10719757* |
| 05/19/2016 | Record/Copy Request |
| 05/30/2016 | Service Returned<br>*Citation for Corinth Health Care, LLC* |



16TH JUDICIAL DISTRICT COURT

# CASE SUMMARY
## CASE NO. 16-03895-16

| | | | |
|---|---|---|---|
| 05/30/2016 | Service Returned *Citation for Thi of Texas LLC* | | |

| DATE | FINANCIAL INFORMATION | | |
|---|---|---|---|
| | **Plaintiff** Conklin, Harry | | |
| | Total Charges | | 338.00 |
| | Total Payments and Credits | | 338.00 |
| | **Balance Due as of 6/13/2016** | | 0.00 |
| 05/19/2016 | Charge | Plaintiff Conklin, Harry | 338.00 |
| 05/19/2016 | TexFile Payment   Receipt # 2016-13125 | Plaintiff Conklin, Harry | (338.00) |



CERTIFIED A TRUE AND CORRECT COPY OF THE RECORD ON FILE IN MY OFFICE
SHERRI ADELSTEIN
DENTON COUNTY CLERK
6/13/16
By: [signature] Deputy Clerk

# *Judicial Docket Entries*

*Cause No. 16-03895-16*

| | |
|---|---|


CERTIFIED A TRUE AND CORRECT COPY OF THE RECORD ON FILE IN MY OFFICE
SHERRI ADELSTEIN
DENTON COUNTY CLERK
6/13/16 By: Teresa [signature] Deputy Clerk
Date

CAUSE NO. 16-03895-16

| | | |
|---|---|---|
| HARRY CONKLIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SHARON W. CONKLIN, DECEASED, and CARL CONKLIN, | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | _____ JUDICIAL DISTRICT |
| CORINTH HEALTH CARE, LLC d/b/a CORINTH REHABILITATION SUITES ON THE PARKWAY and THI OF TEXAS, LLC, | § § § § § | |
| Defendants. | § | DENTON COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

COME NOW, Plaintiffs HARRY CONKLIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SHARON W. CONKLIN, DECEASED, and CARL CONKLIN (collectively, "Plaintiffs") and bring this action against Defendants CORINTH HEALTH CARE, LLC d/b/a CORINTH REHABILITATION SUITES ON THE PARKWAY and THI OF TEXAS, LLC (collectively, "Defendants") seeking actual damages for medical negligence that resulted in severe injuries and the untimely death of Sharon W. Conklin.

### I. SUMMARY OF CASE

This is a case about the inexcusable neglect of Plaintiffs' mother, Sharon W. Conklin, who was a resident receiving physical rehabilitation in the Corinth Rehabilitation Suites on the Parkway nursing home. While Ms. Conklin was a resident in the facility, the nursing and medical staff provided minimal monitoring of her and failed to properly supervise her, which resulted in Ms. Conklin falling multiple times and sustaining injuries. On August 14, 2015, while she was attempting to go to the bathroom, Ms. Conklin fell and fractured her left femur. Even

though Ms. Conklin was transferred to Denton Regional Medical Center, she was unable to recover from her injuries. Ms. Conklin died the following day, on August 15, 2015, due to complications arising from the injuries that she sustained in the fall.

## II. DISCOVERY CONTROL PLAN DESIGNATION

1. Plaintiffs intend that a Level 3 Discovery Control Plan govern this action in accordance with Texas Rule of Civil Procedure 190.4.

## III. PARTIES

2. Plaintiff Harry Conklin is an individual who resides in Texas. In accordance with Section 30.014 of the Texas Civil Practice & Remedies Code, the last three digits of Plaintiff's driver's license number are 675 and the last three digits of Plaintiff's social security number are 926. Plaintiff is a surviving son of Sharon W. Conklin, Decedent, and brings this lawsuit individually, as a wrongful-death action, and as a survival action as the representative of the Estate of Decedent.

3. Decedent would have been entitled to bring a suit for damages had she lived.

4. Plaintiff Carl Conklin is an individual who resides in Texas. In accordance with Section 30.014 of the Texas Civil Practice & Remedies Code, the last three digits of Plaintiff's driver's license number are 860 and the last three digits of Plaintiff's social security number are 368. Plaintiff is a surviving son of Sharon W. Conklin, Decedent, and brings this lawsuit individually, as a wrongful-death action as a surviving child and statutory beneficiary of Decedent.

5. Defendant Corinth Health Care, LLC is a Delaware limited liability company with its principal place of business in Texas located at 3511 Corinth Parkway, Corinth, Texas 76208. During the relevant period of time, Defendant owned, operated, and/or controlled the Corinth

Rehabilitation Suites on the Parkway skilled nursing facility, located at 3511 Corinth Parkway, Corinth, Texas 76208 ("Corinth Rehabilitation"). This Defendant may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

6. Defendant THI of Texas, LLC is a Delaware limited liability company with its principal place of business located at 930 Ridgebrook Road, Sparks, Maryland 21152. During the relevant period of time, Defendant exercised management and operational control over the Corinth Rehabilitation skilled nursing facility at which Decedent was a resident, as well as employing, training, and supervising various nursing and medical staff involved in Decedent's medical care and treatment. This Defendant may be served with process through its registered agent, National Corporate Research, Ltd., 206 East 9th Street, Suite 1300, Austin, Texas 78701.

## IV. JURISDICTION AND VENUE

7. Subject-matter jurisdiction is proper in this Court because the amount in controversy exceeds the minimum jurisdictional threshold of this Court.

8. The Court has personal jurisdiction over Defendants because the acts complained of were committed by Defendants in Denton County, Texas and arise from Defendants' business in Texas.

9. Venue is proper in Denton County Texas in accordance with TEX. CIV. PRAC. & REM. CODE §15.002(a) because all or a substantial part of the acts or omissions giving rise to the claims in this lawsuit occurred in Denton County, Texas. Venue is additionally proper in Denton County Texas in accordance with TEX. CIV. PRAC. & REM. CODE §15.002(a)(3) because Defendants are not natural persons and Defendants' principal offices in this state are in Denton County, Texas. Further, under TEX. CIV. PRAC. & REM. CODE §15.005 because venue in Denton

County is proper as to one Defendant, venue is proper as to all Defendants.

## V. FACTS APPLICABLE TO ALL COUNTS

10. On March 30, 2015, Sharon Conklin, decedent was first admitted into Corinth Rehabilitation for continuing physical therapy after undergoing a thoracentesis for a left pleural effusion at Medical Center of Plano, which is a procedure to remove fluid from the space between the lungs. At the time, Ms. Conklin suffered from congestive heart failure, chronic obstructive pulmonary disease (COPD), and she had recently fallen and sustained a fracture of her right occipital condyle bone, which is a bone at the base of the skull. In addition, Ms. Conklin was unable to walk and had been wheelchair bound for the prior 20 years.

11. Upon her admission into Corinth Rehabilitation, Ms. Conklin was evaluated by the medical and nursing staff, her prior medical injuries and diagnoses were reviewed, and it was noted that she was deconditioned and weak from her recent hospitalization and fall. Due to her various medical conditions, the fact that she was unable to walk and required assistance transferring between her bed and her wheelchair, and because she required extensive assistance from the staff with toileting and grooming, Ms. Conklin was an extremely high fall risk while she was a resident in the facility.

12. Even though the medical and nursing staff at the facility know of Ms. Conklin's weakened condition, inability to walk or stand by herself, her prior falls, and her extremely high fall risk, the medical and nursing staff failed to properly monitor and supervise Ms. Conklin. In addition, the nursing and medical staff failed to comprehensively evaluate Ms. Conklin's risk of falling upon her admission, which resulted in her not being a documented fall risk and no fall prevention measures were put into place to ensure that she did not fall and injure herself.

13. As a result, within approximately one week of being admitted into the facility,

Ms. Conklin fell while she was not being supervised. She was transferred to a nearby hospital, where she was diagnosed with lacerations on her face and a large hematoma (bruise) on her forehead.

14. After she was transferred back to the facility, the nursing and medical staff continued to fail to monitor her closely, assist her with activities of daily living, or comprehensively evaluate her fall risk.

15. On June 29, 2015 (approximately 3 months after she entered the facility), the facility finally evaluated Ms. Conklin's fall risk. However, because her medications and medical conditions were not accurately recorded in the assessment, Ms. Conklin was not evaluated correctly, and her fall risk was not rated properly. Because of this, Ms. Conklin was not assessed as a fall risk.

16. On August 8, 2015, Ms. Conklin fell again at the facility. This time, Ms. Conklin fell out of her wheelchair onto the ground when she attempted to go outside. At the time, there were no nursing staff to assist her. In response to this, the facility did nothing – the facility did not provide Ms. Conklin any additional supervision or monitoring, no fall prevention measures were put into place, and she was not provided additional assistance with transfers between her bed and wheelchair or with activities of her daily living, such as toileting.

17. A few days later, on August 14, 2015, Ms. Conklin fell yet again. This time, as Ms. Conklin was attempting to go to the bathroom, she fell and severely injured her left leg.

18. Ms. Conklin was immediately rushed to Denton Regional Medical Center emergency department, where she was diagnosed with an acute comminuted fracture of her left distal femur. Due to her age and other medical conditions, however, Ms. Conklin was not a candidate for orthopedic surgery to treat the fracture. Due to her severe pain, Ms. Conklin was

prescribed narcotic pain medication and her physicians adopted a plan of care for pain control and non-surgical treatment of her femur fracture.

19. Unfortunately, the following day, August 15, 2015, Ms. Conklin was found unresponsive and without a pulse. Although she received resuscitation efforts for more than two hours, she was never able to regain consciousness.

20. Ms. Conklin died on August 15, 2015 of medical complications due to the left femur fracture that she sustained in the fall at Corinth Rehabilitation.

## VI. CAUSES OF ACTION

COUNT ONE: MEDICAL NEGLIGENCE.

21. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

22. During the relevant period of time, Corinth Health Care, LLC, operated, managed, and/or controlled the Corinth Rehabilitation skilled nursing facility and is a health-care provider licensed by the State of Texas to provide health care. Defendant provided health care to Decedent, and at all times relevant there existed a physician-patient relationship between Defendant and Decedent. As such, Defendant is considered health-care institution under the Texas Civil Practice & Remedies Code.

23. Defendant owed Decedent a legal duty of care to act as a reasonably prudent health-care provider would act under the same or similar circumstances, including but not limited to exercising that degree of care required by Decedent's known physical and mental condition.

24. Through Defendant's agents, employees and representatives, Defendant breached the applicable standard of care while providing medical care and treatment to Decedent by engaging in numerous improper acts and omissions including but not limited to the following:

    a.    Failing to properly monitor, evaluate, and re-evaluate Decedent's known physical condition;

    b.    Failing to properly and timely observe, assess, evaluate, and/or treat Decedent, including but not limited failing to properly evaluate Decedent's risk of falling and accurately rate her fall risk, failing to closely monitor and supervise Decedent to ensure that she did not fall, failing to implement necessary fall prevention measures and follow up on those measures, failing to implement fall injury protection measures and follow up on those measures, and failing to timely administer medical treatment to Decedent;

    c.    Failing to create, implement, and monitor an appropriate care plan that took into consideration Decedent's known physical condition and needs;

    d.    Failing to properly train, monitor, supervise, and oversee its employees, agents, and staff to ensure that proper fall risk evaluation procedures and policies were in place and followed, proper fall prevention measures were put into place for patients such as Decedent, to ensure that measures to closely monitor and supervise Decedent were in place, and to ensure that fall injury protection measures were put into place for Decedent to minimize any injuries in the event that Decedent did fall in the facility;

    e.    Failing to formulate and institute proper policies and procedures for the care and treatment of patients such as Decedent with known medical conditions, and failing to properly train its employees and agents on such proper policies and procedures;

    f.    Failing to exercise reasonable care in the selection and maintenance of its medical and nursing staff;

    g.    Failing to properly supervise its employees, agents, and staff; and

    h.    Failing to ensure that appropriate levels of staffing and training of staff were provided for the care and treatment of patients, including Decedent, and that sufficient funds were budgeted and expended on staff, training or staff, medical supplies, and medical care and treatment for Decedent.

25.    As outlined above, Defendant failed to meet the applicable standards of care that Defendant owed to Decedent, and this failure was a proximate cause of severe damages suffered by Plaintiff and Decedent.

**COUNT TWO: VICARIOUS LIABILITY.**

26.    Plaintiff hereby incorporates and realleges the matters set forth in the preceding

paragraphs as if set forth at length.

27. Defendants employed, trained, supervised, and/or monitored various medical and nursing staff that provided medical care and treatment to Decedent while she was a patient at the Corinth Rehabilitation skilled nursing facility.

28. Defendants are each responsible for the acts and/or omissions of their respective agents, ostensible agents, servants, employees, contractors, and representatives during the care and treatment of Decedent under various theories of vicarious liability, including but not limited to the doctrines of actual authority, apparent authority, *respondeat superior*, and ratification.

29. ***Respondeat Superior*** - At all relevant times, Defendants' agents, employees, and representatives that rendered care and treatment to Decedent were acting within the course and scope of their employment and/or agency with Defendants, in furtherance of Defendants' business, and for the accomplishment of the object for which they were hired and/or employed. Decedent was injured as the result of medical negligence committed by Defendants' respective agents, employees, and representatives that rendered care and treatment to Decedent.

30. ***Actual Authority*** - At all relevant times, Defendants intentionally conferred authority on their agents, intentionally allowed their agents to believe that they had the proper authority, or, through the lack of due care, allowed their agents to believe that they had the proper authority, to act on Defendant's behalf in the care and treatment of Decedent. Decedent was injured as the result of medical negligence committed by Defendants' respective agents, employees, and representatives while acting within the scope of their respective agency with Defendants.

31. ***Apparent Authority*** – At all relevant times, Defendants affirmatively held out their respective agents, employees, and representatives that rendered care and treatment to

Decedent as having authority to act on their behalf, knowingly permitted its respective agents, employees, and representatives to hold themselves out as having property authority, or acted with such a lack of ordinary care as to clothe their agents, employees, and representatives with the indicia of authority. Defendants' conduct caused Decedent to believe that Defendants' agents, employees, and representatives had the authority to act on Defendants' behalf, and Decedent justifiably relied upon Defendants' agents, employees, and representatives' authority.

32. *Ratification* – Defendants are also vicariously liable for the acts and/or omissions of their respective agents, employees, and representatives acting outside the scope of their authority because Decedent was injured by Defendants' agents or non-agents who provided medical care and treatment to Decedent. Defendants' agents and/or non-agents engaged in improper acts and/or omissions on behalf of Defendants, Defendants approved these acts and omissions by word, act, or conduct after acquiring full knowledge of the alleged acts and/or omissions, and Defendants gave approval with the intention of giving validity to the acts and/or omissions of their agents, employees, and representatives.

## VII. DAMAGES

33. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

34. Defendants' breach of duty proximately caused injuries to Decedent, which resulted in the following damages to Plaintiffs and the Estate of Decedent:

**Wrongful-Death Action Damages**

a. Mental anguish in the past and future;
b. Loss of companionship and society in the past and future;
c. Pecuniary losses;
d. Loss of household services in the past and future;
e. Loss of companionship and society;
f. Loss of inheritance; and

g.  Funeral expense reimbursement.

**Survival Action Damages**

a.  Pain and suffering of Decedent;
b.  Mental anguish of Decedent;
c.  Physical impairment of Decedent;
d.  Past medical expenses incurred for Decedent's treatment; and
e.  Funeral expenses incurred by Decedent's estate.

## VIII. EXEMPLARY DAMAGES

35. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

36. As outlined above, Defendant Corinth Health Care, LLC's acts and omissions constitute conscious disregard for the safety and welfare of patients, including Decedent. With actual notice of Decedent's physical condition and medical needs, Defendant failed to exercise even the basic level of proper care, failed to ensure that adequate and properly trained staff treated and monitored Decedent, and failed to ensure that sufficient funds were allocated and expended on staffing and care of patients such as Decedent. In short, Defendant placed profits over its patients. Defendant's conscious disregard for patients and its decision to place profits over its patients resulted in severe injuries to Decedent and Plaintiff.

37. Because Defendant Corinth Health Care, LLC's actions were fraudulent, malicious, and/or grossly negligent, Plaintiffs request that exemplary damages be awarded against this Defendant in a sum within the jurisdictional limits of the Court.

## IX. DEMAND FOR JURY TRIAL

38. Plaintiffs demand a trial by jury and tender the appropriate fee with this petition.

## X. REQUEST FOR RULE 194 DISCLOSURES

39. Plaintiffs request that Defendants disclose to Plaintiffs, within fifty (50) days of

service of this request, the information or materials described in Rule 194.2 of the Texas Rules of Civil Procedure. Defendants may comply with this request by mailing copies of the documents and information required by Rule 194.2 to Patrick Powers, lead counsel, at Powers Taylor, LLP, 8150 N. Central Expressway, Suite 1575, Dallas, Texas 75206. In accordance with Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby inform Defendants of Plaintiffs' intent to use any and all documents produced by Defendants in discovery in this matter at any pre-trial proceeding and/or trial.

## XI. CONDITIONS PRECEDENT

40. Plaintiffs have fully performed all conditions precedent to this action, including but not limited to providing Defendants with written notice of Plaintiffs' claims.

## XII. REQUEST FOR RELIEF AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs HARRY CONKLIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SHARON W. CONKLIN, DECEASED, and CARL CONKLIN respectfully request and pray that CORINTH HEALTH CARE, LLC d/b/a CORINTH REHABILITATION SUITES ON THE PARKWAY and THI OF TEXAS, LLC be cited to appear and answer, and that on final trial, Plaintiffs have judgment against Defendants, jointly and severally, for the following:

   a. An award of Plaintiff's actual and special personal injury and economic damages within the jurisdictional limits of the Court, including but not limited to the compensatory and consequential damages pleaded herein;

   b. Costs of Court;

   c. Pre-judgment and post-judgment interest at the highest rate(s) allowed by law;

   d. Statutory damages allowed by law, within the jurisdictional limits of the Court;

   e. Exemplary damages, within the jurisdictional limits of the Court;

  f. Mental anguish damages; and

  g. Such other and further relief, at law or in equity, to which Plaintiffs may be entitled and which this Court deems just and fair.

               Respectfully submitted,

           By: /s/ Patrick W. Powers
             Patrick W. Powers
             State Bar No. 24013351
             patrick@powerstaylor.com
             Ernest C. Tosh
             State Bar No. 20146100
             ernest@powerstaylor.com

             **POWERS TAYLOR LLP**
             8150 North Central Expressway, Suite 1575
             Dallas, Texas 75206
             214-239-8900 – Office
             214-239-8901 – Fax

             **ATTORNEYS FOR PLAINTIFFS**

PLAINTIFFS' ORIGINAL PETITION –                    PAGE 12